UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22 CR 166 SNLJ (ACL) |
| | ) |
| DANIEL JOSHUA BIRD, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Defendant Daniel Bird's Motion to Suppress Evidence (Doc. 45) was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On October 21, 2022, an individual driving a black Sport Utility Vehicle (SUV) delivered Glock automatic pistol switches during a controlled purchase of the illegal items. Although surveillance was being conducted, the driver was not identified. The investigating officers requested that a member of the Missouri State Highway Patrol stop the SUV for a traffic violation, if the officer developed independent probable cause for a traffic stop, to identify the source of the pistol switches. Shortly thereafter, a Trooper observed the driver of the black SUV speeding. The Trooper stopped the vehicle, identified the driver (Bird) and passenger, and issued Bird a verbal warning.

Bird claims that "the Government has not met their burden to establish probable cause existed for the traffic stop." (Doc. 45 at 3.) The Government responded that Trooper Wunderlich's observation of Bird's vehicle "traveling in excess of the posted 70 miles per hour speed limit on Interstate 55" gave the Trooper "probable cause to stop the vehicle and identify [Bird] as the operator of the vehicle." (Doc. 49 at 4.)

In consideration of the pleadings and evidence submitted by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the request for suppression be denied.

## I. Findings of Fact

On October 21, 2022, law enforcement officers conducted a controlled purchase of Glock automatic pistol switches. Surveillance officers maintained visual contact of the individuals who participated in the sale. During the transaction, the switches were delivered by the driver of a black Buick SUV. *See* Doc. 45 at 1-2.

To identify the driver of the SUV, the officers sought assistance from the Missouri State Highway Patrol. Trooper Blake Wunderlich was notified that a black Buick SUV was a vehicle of interest in an ongoing law enforcement investigation, and it was traveling north on Interstate 55. Trooper Wunderlich positioned his patrol vehicle on the shoulder of the northbound lane of Interstate 55 and waited for a black SUV with the license plate number reported by the officers investigating the sale of the pistol switches.

Approximately twenty minutes later, Trooper Wunderlich observed "a vehicle in the left lane passing another vehicle that was in the right lane. The vehicle in the left lane was. . .traveling much faster than the vehicle in the right." (Tr. 8-9.) Trooper Wunderlich then "paired" his observation "with the reading on [his] radar unit and [it] showed the speed of the faster vehicle. . .was 83 miles per hour." (Tr. 9.) As the vehicle passed Trooper Wunderlich, he "observed that it was a newer black Buick SUV, and [he] was able to see the registration on the rear of the vehicle, which matched" the vehicle of interest. (Tr. 10.)

After seeing the SUV and confirming it was traveling 13 miles per hour over the 70 miles per hour speed limit on the highway with his radar unit, Trooper Wunderlich activated his

emergency equipment to conduct a traffic stop. Within seconds, the SUV slowed down to 70 miles per hour. Upon stopping the vehicle, Trooper Wunderlich requested identification from the driver and passenger. Trooper Wunderlich identified the driver as Daniel Joshua Bird. After taking photos of the driver's and passenger's licenses, Trooper Wunderlich gave Bird a verbal warning, *see* Gov't. Ex. #2, rather than a speeding ticket. Trooper Wunderlich texted the identification of the driver and passenger to the requesting law enforcement officer.

Trooper Wunderlich documented the details of the traffic violation in an electronic Citation Report. *See* Gov't. Ex. #2. He testified that the report reflects "the time and date of the traffic stop, the location, the warning that was issued to him for speeding, and then his identifiers and identifiers of the vehicle." (Tr. 35.)

Bird requests suppression of "the identification evidence Patrolman Wunderlich obtained from the [ ] traffic stop." (Doc. 63 at 5.)

## II.  Conclusions of Law

Bird challenges the traffic stop on two grounds. First, he argues that the stop was not supported by probable cause.[1] Next, he argues that the stop was pretextual in nature due to "Patrolman Wunderlich's desire to assist an ongoing federal investigation that would have completely failed were the passengers in the suspect vehicle not identified." *Id*.

The Court finds the stop of the vehicle was according to law and constitutional.

### II.A.   Traffic Stop

"The Fourth Amendment is not violated if the officer making an investigative stop has a reasonable suspicion of criminal activity." *United States v. Harris*, 617 F.3d 977, 978 (8th Cir.

---

[1] Bird did not challenge the accuracy of Trooper Wunderlich's radar unit. Trooper Wunderlich had extensive training and experience as a patrolman, including conducting traffic stops for speeding violations. (Tr. 19.)

Page **3** of **5**

2010) (citations omitted). The Eighth Circuit has repeatedly held that "even a minor traffic violation provides an officer with probable cause to stop the driver." *Id*. at 979 (citing *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008). *See also United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc); *United States v. Mallari*, 334 F.3d 765 (8th Cir. 2003).

"To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). "As long as an officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law,' the officer has probable cause to conduct a traffic stop." *United States v. Coney*, 456 F.3d at 856 (8th Cir. 2006) (quoting *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996)). *See United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken belief, but objectively reasonable basis for believing, that a traffic violation occurred supported traffic stop). An officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). *See also Coney*, 456 F.3d 850, 856 (officer running stationary radar on Interstate highway had probable cause to stop vehicle traveling 81 miles per hour when the maximum speed limit was 75 miles per hour although defendant argued the stop was pretextual).

Mo. Rev. Stat. § 304.010.2(1) instructs that "the speed limit for the location of rural interstate where Trooper Wunderlich stopped the black Buick operated by Defendant Bird was 70 miles per hour." (Doc. 65 at 3.)

This Court accepts Trooper Wunderlich's testimony as true. He explained the fact he observed a vehicle traveling at a faster rate of speed than other cars on the interstate, then confirmed the vehicle was speeding in that it was traveling 83 miles per hour when the speed

limit was 70 miles per hour.  He also verified that the speeding vehicle's license plate matched that of the vehicle of interest for which the driver's identity was relevant to an active investigation.  Trooper Wunderlich further documented the traffic violation in an electronic Citation Report, which provided corroboration of his testimony.

In consideration of the foregoing analysis, the Court finds that Trooper Wunderlich's action of stopping the black Buick SUV was objectively reasonable and it was supported by probable cause.  The fact the stop was made to confirm the identity of the driver does not invalidate the lawfulness of the stop under the Fourth Amendment.  Bird's request for suppression should be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence (Doc. 45) be **denied**.

Further, the parties are advised that they have until not later than July 28, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2023.